## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Peter Knowland                                :
1749 E. Hallandale Beach Boulevard            :
Hallandale, FL 33008                          :
                                              :
                    Plaintiff                 :
                                              :
v.                                            :    Civil Action No. _____
                                              :
Great Socialist People's Libyan               :
Arab Jamahiriya a/k/a LIBYA                   :
Tripoli, LIBYA                                :
                                              :
and                                           :
                                              :
Libyan Internal Security a/k/a                :
al-'Amn al-Dhakhili                           :
Bab-al-Azizyeh                                :
Assur Road                                    :
Tripoli, LIBYA                                :
                                              :
and                                           :
                                              :
Libyan External Security a/k/a                :
al-'Amn al-Khariji                            :
Bab-al-Azizyeh                                :
Assur Road                                    :
Tripoli, LIBYA                                :
                                              :
and                                           :
                                              :
Mu'ammar al- Qhadhafi                         :
Supreme Leader of the Great Socialist         :
People's Libyan Arab Jamahiriya               :
Tripoli, LIBYA                                :
                                              :
and                                           :
                                              :
Major Abdallah al-Sanusi                      :
Chief, Libyan Internal Security               :
Bab-al-Azizyeh                                :
Assur Road                                    :
Tripoli, LIBYA                                :
                                              :

and                                    :
:
                                       :
SYRIAN ARAB REPUBLIC                    :
Damascus, SYRIA                        :
                                       :
and                                    :
                                       :
Syrian Air Force Intelligence          :
Kafar Susa Roundabout                  :
Damascus, SYRIA                        :
                                       :
and                                    :
                                       :
General Muhammed Al Khuli              :
Chief, Syrian Air Force Intelligence   :
Kafar Susa Roundabout                  :
Damascus, SYRIA                        :
                                       :
                                       :
                          Defendants   :
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . :

## **COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

Plaintiff brings this action pursuant to the provisions of the newly enacted

Defense Authorization Act for Fiscal Year 2008, Section 1083(c), Pub. L. No. 110-181,

§1083, 122 Stat. 3, 338-344 (2008) and 28 U.S.C. § 1602, *et seq*.

This action arises out of the injury of Peter Knowland, which resulted from the

terrorist attack at the Schwechat Airport in Vienna, Austria ("Vienna Airport") in Vienna,

Austria on December 27, 1985 ("Vienna Airport Attack"), which was carried out

simultaneously and in conjunction and coordination with a similar attack at the Leonard

da Vicini Airport, a/k/a Fiumicino Airport, Rome Italy ("Rome Airport Attack").  Both

the Vienna Airport Attack and the Rome Airport Attack were carried out by certain

individuals acting under the instruction and/or control of the Defendants and/or utilizing

2

the funding, aid and support provided by the governments of Libya and Syria as state sponsors of terrorism and others who support terrorism, and to which actions the Defendants rendered material support, aid and direct involvement. Plaintiff states in support of his Complaint and allege as follows:

### JURISDICTION AND VENUE

1.  Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§ 1330 (a), 1331, 1332(a)(2) and 1605A.

2.  Defendants Great Socialist People's Libyan Arab Jamahiriya (hereinafter "Libya"), al 'Amn-al Dhakhili (hereinafter "Libyan Internal Security Agency"), al-'Amn al Khariji (hereinafter "Libyan External Security Agency"), Syrian Arab Republic (hereinafter "Syria"), and the Syrian Air Force Intelligence are subject to suit in the courts of the United States as sponsors of and participants in the ANO's activities pursuant to the Foreign Sovereign Immunities Act, as amended, (hereinafter "FSIA") 28 U.S.C. § 1605A and related statutes.

3.  Defendants General Muhammad al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi are subject to suit in the courts of the United States pursuant to the FSIA, 28 U.S.C. § 1605A and related statutes.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

5.  Actions for wrongful death, personal injury and related torts perpetrated by foreign state sponsors of terrorism acting by and through their officials, employees and agents within the meaning of 28 U.S.C. § 1605A(a)(2)(A)(i) are unique causes of action

3

arising out of the federal counter-terrorism statute(s), specifically §1605A(c), and

applicable state common and statutory law.

## THE PARTIES

### A.    The Plaintiff

6.    This action is brought by the Plaintiff, under the Foreign Sovereign

Immunities Act, 28 U.S.C. § 1602 *et seq.*, and state common law and statutory law.

7.    Plaintiff Peter Knowland was, at the time of the acts alleged, an American

citizen. Peter Knowland is a permanent resident of the State of Florida. At all pertinent

times alleged herein, Peter Knowland was a victim of "torture" as defined in the TVPA,

28 U.S.C. § 1350. He suffered "personal injury" resulting from Defendants' actions,

terrorist acts and activities as required by 28 U.S.C. § 1605A.    Plaintiff Peter Knowland

can sue and be sued in this Court.

### B.    The Defendants

8.    Defendant Libya is a foreign state that had been previously designated a state

sponsor of terrorism pursuant to § 6(j) of the Export Administration Act of 1979, 50

U.S.C. App. § 2405, § 620(A) of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371,

and section 40 of the Arms Export Control Act, and was so designated from December

29, 1979 until 2006, and during the time of the Vienna Airport Attack as required by 28

U.S.C. § 1605A(a)(2)(A)(i). Libya at all times pertinent to this action, provided material

support and resources to the ANO, and directly participated in its terrorist activities. The

ANO, at all times pertinent to this action, had operated in, among other places, Libya,

Iraq, Lebanon, and Syria, carrying out both militant terrorist operations and a campaign

of terrorism. This terrorist campaign included, but was not limited to, attacks in 20

countries, which have killed or injured almost 900 persons. Targets included persons in the United States, the United Kingdom, France, Israel, Austria, Italy and also moderate Palestinians, the Palestine Liberation Organization ("PLO") and various other people and countries. Libya, through its actions caused the personal injuries and deaths described above and below, within the meaning of 28 U.S.C. §1605A, by providing ANO with funding, direction, material support, aid, encouragement, safe haven and training for its terrorist activities.

9. Defendant Syria is a foreign state that has been designated and continues to remain designated as a state sponsor of terrorism pursuant to section 60 of the Export Administration Act of 1979, 50 U.S.C. App. § 2405, section 620(A) of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371, and section 40 of the Arms Export Control Act, since December 29, 1979. Syria, at all times pertinent to this action, provided material support and resources to the ANO. Abu Nidal, at all times pertinent to this action has operated in, among other places, Libya, Iraq, Lebanon, and Syria, carrying out both militant terrorist operations and a campaign of terrorism. This terrorist campaign includes, but is not limited to, attacks in 20 countries, which have killed or injured almost 900 persons. Targets included persons in the United States, the United Kingdom, France, Israel, Austria, Italy, as well as moderate Palestinians, the PLO and various persons and other countries. Syria, through its actions caused the personal injuries and deaths described above, within the meaning of 28 U.S.C. § 1605A, by providing ANO with funding, direction, support, encouragement, safe haven and/or training for its terrorist activities.

10. Defendant Libyan Internal Security ("LISO") is one of the Libyan intelligence services through which Libya supported and directed ANO, which caused the terrorist acts described below.

11. Defendant Libyan External Security ("LESO") is one of the Libyan intelligence services through which Libya supported and directed ANO, which caused the terrorist acts described below.

12. Defendant Mu'ammar al Qhadhafi is the leader of Libya and performed acts within the scope of his office, which caused the terrorist acts described below.

13. Defendant Major Abdallah al-Sanusi was the head of the Libyan Internal Security Agency and performed acts within the scope of his office, which caused the terrorist acts described herein.

14. Defendant Syrian Air Force Intelligence is the Syrian intelligence services through which Syria sponsored Abu Nidal, which caused the terrorist acts described herein.

15. Defendant General Muhammed al-Khuli was the chief of the Syrian Air Force Intelligence and performed acts within the scope of his office, which caused the terrorist acts described below.

16. Defendants General Muhammad al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi performed acts within the scope of their offices, which caused the extrajudicial killings and personal injuries resulting from the acts of terrorism described herein. Accordingly, said Defendants are jointly and severally liable to Plaintiff.

17. Defendants Libya, and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad

al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi are directly and/or vicariously responsible for the actions of their co-defendants because they sponsored the Abu Nidal Organization. Accordingly, Defendants are jointly and severally liable to Plaintiff.

## THE VIENNA AIRPORT ATTACK

18. On December 27, 1985, shortly after 9 a.m., four terrorists from the Abu Nidal Organization, with the aid, support, encouragement and involvement of the various named Defendants, stormed the International Flights terminal of the Schwechat Airport, Vienna, Austria, brandishing Kalashnikov submachine rifles and type F1 hand grenades, which they had smuggled into the airport. As is described more particularly below, the Defendants provided direct and indirect material support for the planning and operation of this terrorist attack.

19. Before commencing their attack upon the Vienna Airport, the terrorists met to finalize their plan for attacking their intended target.

20. The terrorist commenced their attack in a burst of gunfire and exploding hand grenades.

21. Ultimately 3 people were killed and 30 wounded in the Vienna Airport Attack, among them women, children and the elderly.

22. A simultaneous attack was executed by ANO terrorists employing the same strategy at the Leonard da Vicini Airport, a/k/a Fiumicino Airport, in Rome, Italy, killing an additional 13 people and wounding 75.

23. On the same day that the Vienna and Rome airport attacks were carried out, December 27, 1985, the ANO claimed responsibility for both massacres.

24. The surviving terrorist in the Vienna Airport Attack, Mustafa Badra a/k/a Mongi Ben Adballa Saadaoui ("Badra") was arrested and tried in Austria in connection with the massacre at Vienna's Schwechat International Airport..

25. He was convicted in the Austrian criminal courts for his participation in the Vienna Airport Attacks.

26. Badra has admitted to joining the Abu Nidal Organization in 1985 and worked for the ANO at the time of the Vienna Airport Attack, which was directly supported by the government of Libya, and supported by the government of Syria.

27. Badra has also admitted in detail the planning and execution of the Vienna Airport Attack.

28. He and the other members of his hit team were trained with the terrorists who conducted the Rome Airport Attack at an ANO training camp in Syrian-controlled Lebanon.

29. During this training, he learned of a plan to conduct terrorist attacks at airports and tourist attractions frequented by Americans and Israelis.

30. In October 1985, Badra was part of a group that received special training for ANO operations to be conducted throughout Europe, including attacks in Greece, Rome, Vienna, Turkey, Pakistan, at a synagogue, at a coffee shop, and on an airplane. Although Badra only participated in the Vienna Airport Attack, he was aware of the overall purpose of all of the coordinated attacks.

31. Following his training, Badra traveled to Damascus, Syria where he received a fake Tunisian passport, U.S. dollars and instructions. He then traveled with his

accomplices from Damascus to Switzerland and then be train to Vienna. He arrived in Vienna three days before the attack. .

32. Libya provided the terrorists who conducted the Rome and Vienna airport attacks with weapons and passports.

33. Upon arriving in Vienna, Badra received a bag with clothes, a Kalishnikov gun and two grenades.

34. The day before the attack, Badra went to the Vienna Airport to survey the terminal and watch to understand how the security operated at the airport.

35. On the morning of December 27, 1985, Badra met his hit team and their ANO contact at the Hilton Hotel in Vienna where he returned his unused money and passport.

36.   They then arrived at the airport before 9 a.m. and commenced the attack as ordered at 9:00 a.m., local time, in coordination with the Rome Airport Attack.

37. The United States Department of State, Bureau of Public Affairs, Office of the Historian, in its report of Significant Terrorist Incidents, 1961- 2003, lists the Rome Airport Attack and the Vienna Airport Attack on December 27, 1985 as terrorist attacks that were conducted by the Abu Nidal Organization.

38. Background Information on Foreign Terrorist Organizations, released by the Office of Counterterrorism, of the United States Department of State, indicates that the ANO has received considerable support, including safe haven, training, logistical assistance, and/or financial aid from the states of Libya and Syria, each being a Defendant herein.

39.   The instances of physical violence inflicted upon Peter Knowland was undertaken intentionally upon them for the purpose of furthering the objectives of the

governments of Libya and Syria and the terrorist objectives of the ANO, and such acts therefore constitute "torture" as defined in the TVPA.

## DEFENDANTS' SPONSORSHIP AND SUPPORT FOR THE ABU NIDAL ORGANIZATION

40. The government of Libya, and also separately the government of Syria, sponsored and supported the Abu Nidal Organization, a/k/a Black June, Black September, the Fatah Revolutionary Council, the Arab Revolutionary Council, the Arab Revolutionary Brigades, and/or the Revolutionary Organization of Socialist Muslims, a known terrorist organization which was headed by Sabri Al Bana a/k/a Abu Nidal, prior to and at the time of the Vienna and Rome airport attacks.

41. Despite Libya's recent pronouncement of its intent to rejoin the laws of nations and forgo a path of terrorism, this has not always been the case. Since Defendant Mu'ammar al-Qhadhafi seized political control of Libya by military coup in 1969, Libya has balked at international norms, abusing diplomatic privileges and using terrorism as an instrument of its own foreign policy.

42. Libya has used threats of terrorism, its material support and operational assistance for terrorist attacks, and actual terrorist violence as a means of political opposition, specifically targeting the United States, Israel and other countries.

43. Libya supported radical terrorist groups generally by providing terrorist training outside of Libya and by operating terrorist training camps in Tripoli in order to train, instruct, support and educate terrorists on the use of explosive devices, hijacking, assassination, and various commando and guerrilla techniques, in addition to abusing its diplomatic privileges by, among other things, storing arms and explosives at its diplomatic establishments.

44. Throughout the 1980s, both directly and through material support and resources provided to terrorist organizations such as ANO, Libya engaged in a concerted campaign of terrorist activities directed at the United States, Europe, Israel and their allies.

45. Libya's involvement in terrorism was particularly robust from early 1984 through several years after the Vienna and Rome airport attacks, which were committed on December 27, 1985.

46. Also during 1985, Libya was directly involved and/or provided material support for numerous terrorist attacks in addition to the Vienna and Rome airport attacks, including but not limited to the following:

    a.  The ANO hijacking of Egypt Air Flight 648 on November 23, 1985, for which Libya provided passports and moved weapons in diplomatic pouches to the hijackers, allowing the terrorists to travel and to preposition their weapons for use in the attack;

    b.  Also in November 1985, a team of four Libyan agents was arrested in Egypt in an attempt to assassinate former Libyan Prime Minister Bakoush, an enemy of the Qhadhafi regime;

    c.  The September 1985 ANO terrorist attack at Rome's Café de Paris, during which the ANO terrorists threw grenades provided by Libya at the restaurant, injuring 38 tourists, including American citizens;

    d.  Also in September 1985, a Libyan diplomat smuggled approximately 100 letter bombs addressed to Tunisian journalists into Tunisia.

Several of the bombs exploded, injuring two postal workers and causing Tunisia to sever diplomatic relations with Libya;

e.  In the United States in May 1985, a Libyan diplomat at the United Nations was declared persona non grata, and 16 non-official Libyans were subpoenaed to appear before a U.S. grand jury in connection with a plot to kill dissidents in several different states;

f.  In April 1985 in the former West Germany, Libyans were arrested at two separate murder scenes in which Libyans murdered a Moroccan citizen resident and an anti-Qhadhafi Libyan student who had been the target of the Libyan regime for at least two years; and

g.  In Austria in February 1985 the former Libyan Ambassador to Austria, who resigned from his post under the Qhadhafi regime in disgust, was assassinated outside of his home in Vienna.

47.    The Abu Nidal Organization was, at all times relevant hereto, among the most dangerous and violent of the terrorist organizations supported by Libya and Syria, engaging in indiscriminate violence against bystanders, including children.

48.    As of February 1989, the ANO had conducted terrorist attacks in more than 20 countries on three continents, killing more than 300 people and injuring at least 650.

49.    Libya provided substantial material support and sponsorship to the ANO, as well as providing aid, funds and logistical support for the ANO's specific terrorist operations.

50.     The substantial material support to and sponsorship of the ANO by the government of Libya included, but was not limited to, assisting and/or providing the following:

    a.   funds,

    b.   facilities,

    c.   airline tickets,

    d.   free and unobstructed entry into, safe haven in, and exit from Libya by members of ANO,

    e.   terrorist training in Libyan camps,

    f.   use of the privilege of Libya's "diplomatic pouch",

    g.   use of Libya's diplomatic freight privileges,

    h.   official documents of all kinds, including passports,

    i.   provision of uniforms, tanks and BM021 multiple rocket launchers,

    j.   weapons, including hand grenades used in various ANO attacks, and

    k.   actual operational assistance in pre-positioning of people and supplies for the conduct of terrorist operations.

51.     During the year 1985 alone, Abu Nidal, the leader of the ANO met with Qhadhafi at least twice, in addition to meeting separately with Qhadhafi's chief lieutenant, Abd al-Salam Jallud, and conducting an interview from Tripoli.

52.     Following these meetings, ANO leadership began to relocate to Tripoli from Syria.

53.     With specific regard to the coordinated, simultaneous Vienna and Rome airport attacks, the government of Libya supported this operation by, among other things,

providing the ANO terrorists who conducted the attacks with weapons, monies, support, aid, training and passports, which allowed the terrorists to travel.

54.    The hand grenades used in the Vienna Airport Attack and the Rome Airport Attack, as well as in the ANO terrorist attacks on the Café de Paris and Egypt Air Flight 648, bear the same markings as those found on four Libyan terrorists, who were arrested on April 18, 1986, while approaching the US officers' club in Ankara, Turkey, carrying the hand grenades, which they obtained from the Libyan People's Bureau.

55.    The United States Central Intelligence Agency therefore concluded that "[t]he similarities between the grenades seized in 1985 [in the Rome Airport Attack, the Vienna Airport Attack, the Café de Paris attack and the Egypt Air Flight 648 hijacking] and those captured in Turkey corroborate previous reporting that Tripoli provides operational support for the Abu Nidal group and uses its diplomatic installations to pass weapons to terrorists," according to a now declassified CIA report available in the public record.

56.    As President Reagan said at the President's news conference on January 7, 1986, at which time he specifically referenced the Vienna Airport Attack:

> ...these murderers could not carry out their crimes without the sanctuary and support provided by regimes such as Colonel Qadhafi's in Libya. Qadhafi's longstanding involvement in terrorism is well documented, and there's irrefutable evidence of his role in these attacks. The Rome and Vienna murders are only the latest in a series of brutal terrorist acts committed with Qadhafi's backing. Qadhafi and other Libyan officials have publicly admitted that the Libyan Government has abetted and supported the notorious Abu Nidal terrorist group, which was directly responsible for the Rome and Vienna attacks. Qadhafi called them heroic actions, and I call them criminal outrages by an outlaw regime.

14

57.    In the wake of the Vienna and Rome airport attacks, on January 2, 1986, Qhadhafi threatened to "pursue U.S. citizens in their country and streets" in retaliation for any action taken by the United States in response to Libya's involvement in these terrorist attacks.

58.    A Libyan news agency applauded the Vienna and Rome airport attacks as "heroic operations carried out by the sons of the martyrs of Sabra and Shatila . . . ."

59.    The sponsorship by the government of Syria included, among other things, the provision of training in Syrian sponsored ANO terrorist training camps, military and general intelligence, travel documents, safe haven and free passage in and through Syrian controlled territory.

60.    Syria further provided general material support to the ANO by providing the ANO with funds, travel documents, aid, training support and protection at several facilities, including those located in the Bekaa Valley in or near Syria and/or Lebanon.

61.    The sole surviving hijacker of the Rome Airport Attack, Khaled Ibrahim Mahmood ("Ibrahim') confirmed that he and the other three members of his hit team, in addition to the terrorists who carried out the Vienna Airport Attack, were trained in Syrian-occupied Lebanon by Syrians.

62.    Ibrahim also confirmed that the Rome Airport Attack and the Vienna Airport Attack were to be simultaneous, coordinated attacks.

63.    Ibrahim, at his trial, also admitted to being a member of the ANO, and to participating in several ANO terrorist attacks, including the grenade attack on Rome's Café de Paris on September 10, 1985, during which the terrorists used the same type F1 grenades used in the Rome Airport Attack, the Vienna Airport Attack, and the hijacking

of Egypt Air Flight 648 on November 23, 1985, all of which were directly supported by the government of Libya, and supported by the government of Syria.

64.     Ibrahim also admitted that he and the other members of his hit team were trained with the terrorists who conducted the Vienna Airport Attack.

65.     Syria also permitted ANO operatives to maintain a "safe-haven" apartment in Damascus, where ANO terrorists would regularly stay before departing on terrorist missions.

66.     It was customary for ANO terrorists to stay in this apartment during the organizational phase of a given terrorist attack, and remain there until departing to conduct the attack.

67.     The United States Department of State, Office of the Secretary of State, Ambassador-At-Large for Counter-Terrorism, concluded that the ANO conducted the Vienna Airport Attack and the Rome Airport Attack, classifying these terrorist attacks as among the most brutal examples of ANO violence.

68.     The Defense Intelligence Agency of the United States Department of Defense, and other intelligence agencies of the United States government, determined that the Abu Nidal Organization was sponsored by the governments of Libya and Syria.

69.     The provision of material support for the ANO, a known terrorist organization, by the government of Libya and the government of Syria, acting directly and by and through their individual governmental representatives as named in the Complaint, and by other representatives of the government, constitute violations of applicable and numerous United States laws, thereby rendering the government of Libya, the government of Syria, and their individual governmental representatives named as

Defendants herein, jointly and severally liable for their illegal acts and deeds, all to the damage of the Plaintiff, thereby entitling him to Judgment against each of the Defendants, jointly and severally, as prayed for in the within Complaint.

## COUNT I- 28 U.S.C. §1605A(c)

70.    Plaintiff repeats, realleges and incorporates by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

71.    On December 27, 1985, members of the ANO supported and aided by the Defendants, willfully, violently and forcefully committed terrorist acts at the Vienna Airport with the express purpose of inflicting, personal injury, severe pain, suffering, death and severe emotional injuries.

72.    In addition, the acts of assaulting, terrorizing and holding Peter Knowland captive and each and all of the acts set forth above, constituted extreme and outrageous conduct with the intent to inflict emotional distress upon them and emotional distress.

73.    The willful, wrongful and intentional acts of Abu Nidal terrorists were sponsored and directed by Libya, and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, and Libyan Internal Security Agency.

74.    Defendants General Muhammad al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi performed acts within the scope of their offices which sponsored the ANO 's terrorist activities, including but, not limited to the Vienna Airport Attack.

17

75.    As a direct and proximate result of the willful, wrongful and intentional acts of the ANO members, whose acts were sponsored, aided and directed by Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi, Plaintiff Peter Knowland was injured and in that he endured extreme mental anguish, physical injury and pain and suffering, all to his damage.

**WHEREFORE,** Plaintiff demand that judgment be entered, jointly and severally, against Defendants for the damages he suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **ONE HUNDRED MILLION ($100,000,000.00) US Dollars**, on this Count I, and his costs expended, including attorneys' fees.

## COUNT II – BATTERY
### (Under 28 U.S.C. §1605A(c) and State Law)

76.    Plaintiff repeats, realleges and incorporates by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

77.    On December 27, 1985, members of the ANO willfully, violently and forcefully committed terrorist acts at the Vienna Airport with the express purpose of inflicting severe pain and suffering and death.  Peter Knowland was present at the terminal and were accordingly seized against his will.  The willful, wrongful and intentional acts of Abu Nidal were sponsored by Libya, and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, and Libyan Internal

Security Agency constituted a battery upon the person of Peter Knowland causing injury to him as set forth above.

78.    Defendants General Muhammad al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi performed acts within the scope of their offices which sponsored the ANO 's terrorist activities, including but, not limited to the Vienna Airport Attack.

79.    As a direct and proximate result of the willful, wrongful and intentional acts of the ANO members, whose acts were sponsored by Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi, Plaintiff Peter Knowland was injured in that he endured extreme mental anguish, physical injury and pain and suffering, all to his damage.

**WHEREFORE,** Plaintiff demands that judgment be entered, jointly and severally, against the Defendants for the damages he suffered, including, but not limited to, pain, suffering, mental anguish, loss of life and/or limb, permanent and disabling disfigurement and physical injuries as well as pecuniary losses, in the amount of **FIFTY MILLION ($50,000,000.00) US Dollars**, on this Count II, and his costs expended, including attorneys fees.

### COUNT III – ASSAULT

### (Under 28 U.S.C. §1605A(c) and State Law)

80.    Plaintiff repeats, realleges and incorporates by reference those facts and allegations set forth in paragraphs in all the forgoing paragraphs as if fully set forth herein.

81.    During the Vienna Airport Attack, the ANO terrorists intentionally and willfully put Peter Knowland in fear for his life and apprehension of harm and injury as a direct result of the terrorists' actions in brandishing and firing weapons and explosives, and the physical and mental abuse they inflicted upon him.

82.    As a direct and proximate result of the willful, wrongful and intentional acts of the ANO members, whose acts were sponsored by Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi, Plaintiff Peter Knowland was injured in that he endured extreme mental anguish, physical injury and pain and suffering, all to his damage.

**WHEREFORE,** Plaintiff demands that judgment be entered, jointly and severally, against the Defendants for the damages he suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **ONE HUNDRED MILLION ($100,000,000.00) US Dollars**, on this Count III, and his costs expended, including attorney's fees.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Under 28 U.S.C. §1605A(c) and State Law)

83.    Plaintiff repeats, realleges and incorporates by reference those facts and allegations set forth in all of the forgoing paragraphs as if fully set forth.

84.    The acts of terrorizing and holding Peter Knowland captive and each and all of the acts set forth above, constituted extreme and outrageous conduct with the intent to inflict emotional distress upon them and emotional distress.

85.    As a direct result and proximate result of the willful, wrongful and intentional acts of the ANO, whose acts were sponsored by Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi, Peter Knowland, was caused to suffer severe emotional distress, all to his damage.

**WHEREFORE,** Plaintiff demands that judgment be entered, jointly and severally, against Defendants for the damages he suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **ONE HUNDRED MILLION ($100,000,000.00) US Dollars**, on this Count IV, and his costs expended including attorney's fees.

## COUNT V – ACTION FOR CIVIL CONSPIRACY
### (Under 28 U.S.C §1605A(c) and State Law)

86.    Plaintiff repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

87.    Defendants Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi did knowingly and willfully conspire with and/or agree to sponsor a terrorist organization, within the meaning of 28 U.S.C. § 1605A. Said terrorist organization willfully and deliberately committed an act of terrorism, which caused the injuries to Peter Knowland, all to his damage.

88.    For the reasons stated above, and having conspired to sponsor the terrorist organization which willfully and deliberately committed an act of terrorism which caused the injury of Peter Knowland, all defendants are jointly and severally liable to plaintiff for all damages in this civil action.

**WHEREFORE,** Plaintiff demands that judgment be entered, jointly and severally, against Defendants in the amount of **ONE HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS,** on this Count V, and his costs expended, including attorney's fees.

## COUNT VI – ACTION FOR AIDING AND ABETTING

### (Under 28 U.S.C. §1605A(c) and State Law)

89.    Plaintiff repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

90.    Defendants Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi did knowingly and willfully provide substantial assistance, material support and sponsor a terrorist organization within the meaning of 28 U.S.C. § 1605A, which terrorist organization willfully and deliberately committed an act of terrorism, which caused the injuries to Peter Knowland, all to his damage.

91.    For the reasons stated above, and having aided and abetted a terrorist organization which willfully and deliberately committed an act of terrorism which caused the injury to Peter Knowland all defendants are jointly and severally liable to plaintiff for all damages in this civil action.

WHEREFORE, Plaintiff demands that judgment be entered, jointly and severally, against Defendants in the amount of **ONE HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS,** on this Count VI, and his costs expended, including attorney's fees.

## COUNT VII – PUNITIVE DAMAGES

## (Under 28 U.S.C. §1605A(c) and State Law)

92.     Plaintiff repeats, realleges and incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

93.     The actions of the ANO, as above set forth, were intentional and malicious and in willful, wanton and reckless disregard of the rights and well being of Peter Knowland, all to his damage  The acts of the ANO were facilitated by funding, training, aid, support and sponsorship by Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi.

94.     In providing such sponsorship General Muhammad al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi rendered material support to those actually carrying out the acts above described.  The Plaintiff is entitled to an award of punitive damages and same is hereby requested against the defendants, jointly and severally, in accordance with the provisions of 28 U.S.C. §1605A making the foreign states that are or were state sponsors of terrorism, and their officials, employees, or agents of a nation which has been liable for punitive damages under the factual circumstances as occurred during the course of committing these heinous and horrible acts of terrorism.

23

95.   In accordance with 28 U.S.C.§1605A(c), Libya and Syria, who were designated state sponsors of terrorism at the time of the Vienna Airport Attack are vicariously liable for the acts of its officials, employees and agents.

**WHEREFORE,** Plaintiff demands that judgment be entered, jointly and severally, against Defendants in the amount of **ONE BILLION US DOLLARS ($1,000,000,000.00)**, as punitive damages on this Count VIII, and his costs expended, including attorney's fees.

The award of punitive damages, as requested, is to punish Libya, Syria, LISO, LESO, the Syrian Air Force Intelligence,General Muhammad al-Khuli, Mu'ammar al-Qhadhafi and Major Abdallah al-Sanusi and other officials, employees, and agents of Libya and Syria for their conduct in supporting terrorism and the terrorist murderous acts described herein, and to send a message to them and others that the United States of America and its citizens respond to the lawless acts of terror and murder with the application of orderly justice.

### ADDITIONAL RELIEF REQUESTED

Plaintiff requests leave of Court to amend this Complaint, and for such further and other relief to which the Plaintiff may be entitled, including prejudgment interest, as the interests of justice require.

**WHEREFORE,** Plaintiff requests judgment against the Defendants as follows:

1. Judgment against the Defendants, jointly and severally, for the damages to which the Plaintiff is entitled under the laws of the United States of America in amounts as prayed for herein, and as shall be proven at trial.

2.  Judgment against Defendants, jointly and severally, for punitive damages and to which the Plaintiff may be and are entitled under applicable law, all in an amount prayed for herein and as shall be determined at trial.

3.  Judgment against the Defendants, jointly and severally, for all costs expended herein.

4.  Judgment against the Defendants, jointly and severally, for reasonable attorneys' fees incurred incident hereto.

5.  Interest thereon at the legal rate from date of the loss, December 27, 1985, until the date of judgment, until paid in full.

6.  Judgment against Defendants, jointly and severally, for any and all other relief to which Plaintiff may be entitled.

7.  That *lis pendens* notice of action may issue and be noted and enforced by the Court.

8.  Leave of Court to amend this Complaint as the interests of justice require.

Dated: July 30, 2008

Respectfully Submitted,

HEIDEMAN NUDELMAN
& KALIK, P.C.
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: 202-463-1818
Telefax:    202-463-2999

By: _____

Richard D. Heideman (No. 377462)
Noel J. Nudelman (No. 449969)
Tracy Reichman Kalik (No. 462055)

25

Steven R. Perles (No. 326975)
Edward MacAllister   (No. 494558)
THE PERLES LAW FIRM, PC
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: 202-955-9055
Telefax:    202-955-3806

*Of Counsel for Plaintiffs:*

F. R. Jenkins (Virginia Bar No. 36302)
Meridian 361 International Law
Group, PLLC
Temple Court Chambers
New Court
Temple
London EC4Y 9BE
United Kingdom
Tel. + 1-866-338-7087
Facsimile + 1-202-315-3894

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Peter Knowland | Great Socialist People's Libyan Arab Jamahiriya, et al. |

88888
88888

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Richard D. Heideman
Heideman Nudelman & Kalik, P.C.
1146 19th Street, NW  5th Floor
Washington, DC  20036
202-463-1818

Case: 1:08-cv-01309
Assigned To : Kessler, Gladys
Assign. Date : 7/30/2008
Description: PI/Malpractice

---

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U S Government Plaintiff
- ⊙ 3 Federal Question (U S Government Not a Party)
- ○ 2 U S Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

- ○ **A.** *Antitrust*
  - ☐ 410 Antitrust

- ⊙ **B.** *Personal Injury/ Malpractice*
  - ☐ 310 Airplane
  - ☐ 315 Airplane Product Liability
  - ☐ 320 Assault, Libel & Slander
  - ☐ 330 Federal Employers Liability
  - ☐ 340 Marine
  - ☐ 345 Marine Product Liability
  - ☐ 350 Motor Vehicle
  - ☒ 355 Motor Vehicle Product Liability
  - ☒ 360 Other Personal Injury
  - ☐ 362 Medical Malpractice
  - ☐ 365 Product Liability
  - ☐ 368 Asbestos Product Liability

- ○ **C.** *Administrative Agency Review*
  - ☐ 151 Medicare Act
  - **Social Security:**
  - ☐ 861 HIA (1395ff)
  - ☐ 862 Black Lung (923)
  - ☐ 863 DIWC/DIWW (405(g)
  - ☐ 864 SSID Title XVI
  - ☐ 865 RSI (405(g))
  - **Other Statutes**
  - ☐ 891 Agricultural Acts
  - ☐ 892 Economic Stabilization Act
  - ☐ 893 Environmental Matters
  - ☐ 894 Energy Allocation Act
  - ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

- ○ **D.** *Temporary Restraining Order/Preliminary Injunction*

  Any nature of suit from any category may be selected for this category of case assignment.

  *(If Antitrust, then A governs)*

---

- ○ **E.  General Civil (Other)**    OR    ○ **F.  Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

⑧

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI.  CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Plaintiff brings suit pursuant to 28 USC 1605A for his personal injury damages and for punitive damages.

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** $100,000,000    Check YES only if demanded in complaint    **JURY DEMAND:** YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☒    NO ☐    If yes, please complete related case form

DATE  7/30/08    SIGNATURE OF ATTORNEY OF RECORD  _(signature)_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence. Use 11001 to indicate plaintiff is resident of Washington, D.C., 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES. This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT. The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION. Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY. If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.