UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHELLE VAN BENEDEN, *as Sole Legatee of Peter Lesley Knowland*, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 08-1309 (RMC) |
| ABDALLAH AL-SANUSI, *et al.*, | ) ) ) |  |
| Defendants. | ) ) |  |

**MEMORANDUM OPINION**

Who was Peter Knowland? It depends on whom you ask. According to Michelle Van Beneden, who claims to be Mr. Knowland's sole heir, Mr. Knowland was an American national injured in an horrific Syrian-sponsored terrorist attack on the Schwechat Airport in Vienna, Austria in 1985 for which his estate may recover damages. Ms. Van Beneden claims that Mr. Knowland, who was formerly named Peter Lesley but changed his last name one year before the attack, died decades later outside the United States after executing a Will that left his estate to her rather than to his wife. Ms. Van Beneden further contends that a Belgian court has appointed her administrator of Mr. Knowland's estate. The Syrian Arab Republic disagrees. It contends that the only American man injured in the attack was an individual named Peter Lesley, who was not Mr. Knowland, and that regardless of Mr. Knowland's true identity, Ms. Van Beneden has no legal claim to his estate. Accordingly, Syria moves for summary judgment for lack of standing. This Court need not square these competing contentions, however, because the Foreign Claims Settlement Commission has found that not only is Ms. Van Beneden not the proper representative of Mr. Knowland's estate, but also that Mr. Knowland's estate does not

1

exist as a legal entity. Collaterally estopped from contesting these findings, Ms. Van Beneden is without standing to pursue the instant litigation. Consequently, the Court will grant summary judgment to Syria.

## I. FACTS

On December 27, 1985, two teams of terrorists associated with the Abu Nidal Organization (ANO)[1] simultaneously attacked the Schwechat Airport in Vienna, Austria, and the Fiumicino Airport in Rome, Italy. Compl. [Dkt. 1] ¶¶ 18, 22; *Van Beneden*, 709 F.3d at 1167. The twin attacks resulted in the deaths of sixteen people and the wounding of 105. *Id.* ¶¶ 21-22. ANO claimed responsibility for the attacks. *Id.* ¶ 23. Later, two of the attackers corroborated ANO's involvement and revealed that the terrorists were trained by Syrians at ANO camps in Syrian-controlled Lebanon. *See id.* ¶¶ 24-36, 61-64. The instant litigation stems from these attacks.

Nearly twenty-three years after the attacks, Peter Knowland sued Syria, the State of Libya, and several Syrian and Libyan organizations and individuals pursuant to the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. §§ 1602 *et seq.*[2] The Complaint alleges that Mr. Knowland was injured during the attack at the Schwechat Airport, and that he "was, at the time of the acts alleged, an American citizen[,] . . . . [and] is a permanent resident of the State of Florida." Compl. ¶ 7. Unmentioned in the Complaint, however, is that Mr. Knowland had not

---

[1] Designated as a foreign terrorist organization by the U.S. Department of State, ANO "seeks the elimination of Israel and the derailment of the Middle East peace process. Since it split from the Palestine Liberation Organization in 1974, . . . ANO has staged attacks in over twenty countries . . . ." *Van Beneden v. Al-Sanusi*, 709 F.3d 1165, 1167 (D.C. Cir. 2013) (internal citation omitted).

[2] The Court dismissed all parties in 2009 except Syria, the Syrian Air Force Intelligence, the chief of Syrian Air Force Intelligence, and the chief of Libyan Internal Security. *See* Aug. 7, 2009 Minute Order. Although these four defendants are the only parties that remain, Mr. Knowland has effected service of process on only Syria and the Syrian Air Force Intelligence. *See* Return of Service [Dkt. 9]. Syria moves for summary judgment.

always been an American citizen, a resident of Florida, or for that matter, sported the surname Knowland. Thus, the Court is tasked with patching together Mr. Knowland's life from documents in the record.

**A. The Life of Mr. Knowland**

According to his Certificate of Naturalization, Mr. Knowland was born in Hungary on July 14, 1944. Opp'n to Syria's Mot. for Summ. J. (Opp'n) [Dkt. 32], Ex. A (Certificate of Naturalization) [Dkt. 32-1]. Under the name Peter Lesley, he became a U.S. citizen on May 19, 1969. *Id.* In 1984, Mr. Knowland successfully petitioned a California state court to change his legal name from Peter Lesley to Peter Lesley Knowland. *Id.*, Ex. D (Decree Changing Name) [Dkt. 32-4]. Presumably, at that time, Mr. Knowland lived in California.

At some point, Mr. Knowland moved abroad; when and where is unclear. Also uncertain is how Mr. Knowland came to be in Austria at the time of the Schwechat Airport attack. However, a Will that Mr. Knowland executed in Monaco on September 7, 2009, in anticipation of a surgical procedure, fills in a few gaps. *Id.*, Ex. E (Translated Will) [Dkt. 32-5] at 7. According to that Will, Mr. Knowland married Decia Knowland shortly after the attack on the Schwechat Airport. *Id.* at 6. The pair wed in Austria but "established [their] first matrimonial residence" in Belgium, where, at an unspecified time, Mr. Knowland became a citizen (in addition to his earlier U.S. citizenship). *Id.* The marriage evidently soured. At the time of the Will, Mr. Knowland lived apart from his wife: she in Switzerland and he in Monaco. *Id.* By the terms of the Will, Mr. Knowland expressly "deprive[d] [his] wife of all rights to [his] inheritance . . . ." *Id.* Mr. Knowland "establish[ed] Mrs. Michèle Marie Françoise Van Benden [sic] as [his] sole legatee . . . .[,]" and directed that she "receive the net proceeds that [he] will

3

receive from the liquidation [of certain marital property]. . . . [as well as] all assets that [he] own[ed] on the day of [his] death."[3] *Id.*

Mr. Knowland survived his surgery, but died on January 20, 2010, in Belgium. At the time of his death, he possessed a U.S. passport that had been issued by the U.S. Embassy in Brussels, and had an expiration date in October 2010. *Id.*, Ex. B (U.S. Passport) [Dkt. 32-2]. According to a death notice issued by the U.S. Department of State, Mr. Knowland died of unspecified causes. The death notice, which recorded Monaco as Mr. Knowland's permanent or temporary residence, identified two aliases for him: Peter Lesley and Laszlo Peter Takascs. *Id.*, Ex. C (Amended Report of Death of an American Citizen Abroad) [Dkt. 32-3].

**B. Mr. Knowland's Quest for Damages**

Shortly before his death and more than twenty years after the ANO attacks, Mr. Knowland began seeking compensation for the injuries he suffered during the attack on the Schwechat Airport. In so doing, he instituted parallel proceedings before the U.S. Department of Justice's Foreign Claims Settlement Commission (FCSC) and this Court.

*1. Structure of FCSC*

FCSC is a product of the International Claims Settlement Act, 22 U.S.C. §§ 1621, *et seq.*, and the War Claims Act, 50 U.S.C. App. §§ 2001-2007. The Commission "is a quasi-judicial, independent agency within the Department of Justice which adjudicates claims of U.S. nationals against foreign governments, under specific jurisdiction conferred by Congress, pursuant to international claims settlement agreements, or at the request of the Secretary of State." History and Overview of FCSC, U.S. Dep't of Justice, http://www.justice.gov/fcsc/about-comm.html/ (last visited January 22, 2014).

---

[3] Although there appears to be various spellings of Ms. Van Beneden's name, the Court spells her name as the parties have: Michelle Van Beneden.

4

FCSC receives claim applications and makes an initial determination. If FCSC denies the claim, in whole or in part, then the claimant may request a hearing. 45 C.F.R. § 508.1. At that hearing, the claimant may appear and may be represented by an attorney. *Id.* § 500.1(a). FCSC is permitted to designate counsel to represent "the public interest opposed to the allowance of an unjust or unfounded claim or portion thereof . . . ." *Id.* § 508.5(a). FCSC has subpoena power, *see id.* § 501.2, may receive oral testimony and documentary evidence, and claimants or counsel for FCSC may cross-examine such evidence, *id.* § 508.5(a). After such a hearing, FCSC may affirm, modify, or reverse its initial decision. All of its findings "concerning the persons to whom compensation is payable, and the amounts thereof, are conclusive and not reviewable by any court." *Id.* § 508.7.

2. *Proceedings Before this Court and FCSC*

On July 30, 2008, Mr. Knowland filed the instant FSIA lawsuit. The next year, the U.S. Department of State referred certain claims of U.S. nationals against Libya to FCSC, pursuant to the claims settlement agreement, Claims Settlement Agreement, U.S.-Libya, Aug. 14, 2008, 2008 U.S.T. 72, which the United States had reached with Libya and implemented through the Libyan Claims Resolution Act, *see* Pub. L. No. 110-301, 122 Stat. 2999 (codified at 28 U.S.C. § 1605A), and Executive Order 13,477, 73 Fed. Reg. 65,965 (Oct. 31, 2008). *Estate of Peter Lesley Knowland v. Great Socialist People's Libya Arab Jamahiriya (Knowland II)*, Foreign Claims Settlement Comm'n, Claim No. LIB-II-166, Decision No. LIB-II-172, at 2-3 (Sept. 13, 2012) (Proposed Decision). Mr. Knowland subsequently dismissed Libya from this lawsuit, *see* Notice of Voluntary Dismissal [Dkt. 6], and filed a claim with FCSC. Although FCSC awarded him three million dollars ($3,000,000.00) for the physical injuries he suffered due to the attack on Schwechat Airport, *see Peter Lesley Knowland v. Great Socialist People's*

*Libya Arab Jamahiriya (Knowland I)*, Foreign Claims Settlement Comm'n, Claim No. LIB-I-048, Decision No. LIB-I-018 (Oct. 23, 2009) (Final Decision), he was eligible to submit an additional claim for compensation no later than July 7, 2010, *Knowland II*, Claim No. LIB-II-166 at 3 (Feb. 15, 2013) (Final Decision).

Before he could file an additional claim, Mr. Knowland died in January 2010. One day before the deadline for filing the additional claim, attorney Richard Heideman submitted a follow-on claim as Mr. Knowland's representative. *Id.* Mr. Heideman, of the firm Heideman Nudelman & Kalik, P.C., told FCSC that "we just learned of Mr. Knowland's passing" and were "in the process of trying to identify next of kin and determine whether an estate has been opened." *Id.* (internal quotations omitted).

In the interim, this Court dismissed Mr. Knowland's FSIA lawsuit on October 8, 2010, finding it untimely under FSIA's statute of limitations, 28 U.S.C. § 1605A. *See* Mem. Op. [Dkt. 20]. On November 4, 2010, Tracy Kalik of Heideman Nudelman & Kalik, Steven Perles and Edward MacAllister of The Perles Law Firm, PC, and F.R. Jenkins of Meridian 361 International Law Group, PLLC, asked this Court to reconsider its dismissal. *See* Mot. to Reconsider [Dkt. 22]. These attorneys informed the Court for the first time that Mr. Knowland had died in Belgium on January 20, 2010.[4] *Id.* at 1 n.1. Citing *Haase v. Sessions*, 835 F.2d 902,

---

[4] The Motion intimated that counsel had only recently learned of Mr. Knowland's death, stating:

> On October 22, 2010, Steven R. Perles, Esq., as counsel for Plaintiff obtained information from the United States Department of State that the Plaintiff, Peter Knowland, had died on January, 20, 2010[,] and was buried in Brussels, Belgium. Upon obtaining this confirmation, counsel for . . . Plaintiff has been attempting to locate information which would identify the representative of Mr. Knowland's estate. Upon identifying the proper estate representative, counsel for . . . Plaintiff will substitute the [e]state of Peter Knowland as the entity on whose behalf this claim is made.

6

906 (D.C. Cir. 1987), the Court directed counsel to substitute for Mr. Knowland a legal representative of his estate no later than April 15, 2011, or else the suit would be dismissed for lack of standing, Mar. 16, 2011 Minute Order. On April 7, 2011, counsel requested additional time to file a substitute legal representative for Mr. Knowland. *See* Mot. for Extension of Time [Dkt. 23]. Two weeks later, the Court denied the reconsideration and the request for additional time. *See* Apr. 21, 2011 Order [Dkt. 24]. Even though counsel had not substituted a legal representative for Mr. Knowland by April 15, the Court did not dismiss the case. It explained that it was "satisfied the [e]state of Peter Knowland exists as some legal entity, though an heir is not named," adding that "[w]ere the Court *not* satisfied that the [e]state of Peter Knowland exists as some legal entity, the court would have denied the motion for extension *and* dismiss[ed] [the] suit for lack of jurisdiction." *Id.* at 2 n.1. On May 20, 2011, more than a month after the deadline for substitution that the Court had imposed, counsel filed a consent motion to substitute Ms. Van Beneden for Mr. Knowland. *See* Consent Substitution Mot. [Dkt. 25]. The Court granted the request on February 1, 2012. *See* Feb. 1, 2012 Order [Dkt. 28].

Meanwhile, before FCSC, counsel continued to pursue Mr. Knowland's second claim for compensation. On June 24, 2011, Heideman Nudelman & Kalik obtained an Order from the President of the Belgian Court of First Instance which recognized Ms. Van Beneden as Mr. Knowland's "universal legatee" and appointed her "an ad hoc administrator . . . solely for the purpose of representing the interests of the late Mr. Knowland and his universal legatee in procedures in the United States against the [S]tates of Libya and Syria as part of compensation following the terrorist attack of 27 December 1985." Opp'n, Ex. F (Belgian Order) [Dkt. 32-6] at 8. The next month, counsel updated the form for the claim before FCSC, submitting a new

---

*Id.* at 1 n.1. The record shows that Mr. Heideman informed FCSC of Mr. Knowland's death nearly four months earlier. None of the attorneys before the Court has explained their failure to notify the Court sooner of Mr. Knowland's death.

7

signature page with Ms. Van Beneden's signature and a letter stating that the Belgian court had appointed her "[a]dministrator of Mr. Knowland's estate," and that Mr. Knowland's estate was "being handled in Belgium." *Knowland II*, Claim No. LIB-II-166 at 3 (Final Decision).

On September 13, 2012, FCSC rendered its preliminary decision on the second claim for Mr. Knowland. It denied the claim on the grounds that Ms. Van Beneden lacked standing. As described in its Final Decision, FCSC concluded that:

> (1) the Belgian court's order does not show that Ms. Van Beneden represents the [e]state of Mr. Knowland; (2) the application for the order makes representations that raise unanswered questions about the case;[5] and (3) it is unclear from the evidence in the record whether the Belgian court has jurisdiction to appoint an administrator for Mr. Knowland's estate.

*Id.* at 4 (internal quotations omitted). Counsel objected to the ruling, and an oral hearing followed in January 2013.

FCSC affirmed its Proposed Decision on February 15, 2013. It again found that Ms. Van Beneden lacked standing, focusing on the deficiencies in her appointment as "ad hoc [a]dministrator" of Mr. Knowland's estate. FCSC stressed that not only did the Belgian Order not appoint Ms. Van Beneden as representative of Mr. Knowland's estate, but also that there was

---

[5] In its Proposed Decision, FCSC identified a number of concerns with the documentation counsel provided in support of the second claim for compensation. Most notably, FCSC independently confirmed that the Florida address for Mr. Knowland submitted by counsel was a commercial business in a shopping center, *Knowland I*, Claim No. LIB-II-166 at 6 n.1 (Proposed Decision), and discovered that Mr. Knowland's Social Security number and nationality were not consistent throughout the documentation submitted, *id.* at 8. These discoveries troubled FCSC, and equally dismay the Court. The Memorandum Opinion the Court issued on October 8, 2010, was premised on the fact that the Complaint alleged that Mr. Knowland was a living, permanent resident of Florida. Unbeknownst to the Court, Mr. Knowland had been dead for nearly ten months and possibly *never* resided in Florida.

8

no evidence that *any* court in *any* country had recognized or organized such an estate.[6] FCSC found that "significant questions" existed as to how and whether an estate had been established in Belgium. *Knowland II*, Claim No. LIB-II-166 at 7 (Final Decision). FCSC noted that "[c]ounsel's own Belgian-law expert opined that *Monegasque* law would apply" rather than Belgian law, and FCSC "questioned why Florida law would not apply, since the payment of the [original three million dollar] award . . . was made to Mr. Knowland at a Florida address." *Id.* (emphasis added). Moreover, counsel representing Ms. Van Beneden had admitted "that the estate, if it ever existed, [was] . . . in disarray," *id.* at 4, and produced no evidence that the lawyers ever had been retained by the estate, *id.* at 5. FCSC concluded that "there [were], essentially, only attorneys before the Commission, and no client, claim or claimant in relation to which an award may be made." *Id.* at 4. Thus ended the pursuit for additional compensation from FCSC.

### C. The Instant Litigation

In the meantime, this Court's October 2010 decision was appealed. *See* Notice of Appeal [Dkt. 26]. Counsel for Ms. Van Beneden argued before the Circuit that Mr. Knowland's suit related to *Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, Civ. Action No. 1:06-00727 (D.D.C. filed Apr. 21, 2006), and should be permitted to proceed as a timely "related action" under 28 U.S.C. § 1605A(b), *Van Beneden*, 709 F.3d at 1166-67. The D.C. Circuit agreed that the twin ANO attacks in Vienna and Rome constituted a single event, reversed, and remanded. *See id.* at 1168-69.

---

[6] Agreeing with FCSC, this Court underscores that the Belgian Order appointed Ms. Van Beneden only as "ad hoc [a]dministrator" "solely for the purpose of representing the interests of the late Mr. Knowland," Belgian Order at 8, and *not* his estate.

9

On remand, Syria moves for summary judgment for lack of subject matter jurisdiction. *See* Mot. for Summ. J. [Dkt. 30]. Mr. Knowland opposes, *see* Opp'n, and Syria has replied, *see* Reply [Dkt. 33].

## II. LEGAL STANDARDS

This case arises at the intersection of three familiar concepts: summary judgment; standing; and collateral estoppel. In the context of a motion for summary judgment, the burden is on Ms. Van Beneden to produce evidence sufficient for a reasonable jury to find that she has standing to bring this suit. There is another dimension to this case, however. Ms. Van Beneden already has litigated, and lost, on the exact same question of standing before FCSC.

### A. The Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. The nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must "go beyond the pleadings and by her

own affidavits, or by the depositions, answer to interrogatories, and admissions on file," *Celotex Corp.*, 477 U.S. at 324 (internal quotations omitted), present specific facts that would enable a reasonable jury to find in its favor, *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. Standing

Article III of the U.S. Constitution limits the jurisdiction of the federal courts. U.S. Const. art. III, § 2. As relevant here, federal courts have jurisdiction over cases involving a federal statute, 28 U.S.C. § 1331, or a nonjury civil action against a foreign state, 28 U.S.C. § 1330, and where, in the Constitution's words, there also is a "Case[]" or "Controvers[y]," *id.*, art. III, § 2, cl. 1. No action of the litigators can confer subject matter jurisdiction on a federal court. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). "Every plaintiff in federal court bears the burden of establishing the three elements that make up the 'irreducible constitutional minimum' of Article III standing: injury-in-fact, causation, and redressability." *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362 (D.C. Cir. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

At the summary judgment stage, a plaintiff cannot "rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (internal quotations and citation omitted). In other words, "[a]t summary judgment, [the plaintiff's] burden is to show that a reasonable juror could find he has standing." *Dominguez*, 666 F.3d at 1362 (citing *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 862 (D.C. Cir. 2008)).

11

### C. Collateral Estoppel

Under the doctrine of collateral estoppel, or issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Collateral estoppel applies when:

> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination. An example of such unfairness would be when the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude.

*Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).

Collateral estoppel can be invoked by a stranger to the prior action against a party to that prior action, as the Supreme Court "has virtually eliminated the mutuality requirement for collateral estoppel." *Novak*, 703 F.2d at 1309 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-28 (1979) and *Blonder–Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 320-27 (1971)). The doctrine "precludes a plaintiff from relitigating identical issues by merely switching adversaries." *Parklane*, 439 U.S. at 329 (internal quotations and citation omitted). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple [lawsuits], conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Cutler v. Hayes*, 818 F.2d 879, 888 (D.C. Cir. 1987).

### III. ANALYSIS

To bring a lawsuit against a foreign state for injuries arising from an act of terror, FSIA requires that the claimant show he "was, at the time the act [of terror] . . . occurred . . . a national of the United States; . . . a member of the armed forces; or . . . otherwise an employee of the Government of the United States . . . ." 28 U.S.C. § 1605A(a)(2)(A)(ii). Syria argues that the instant litigation does not satisfy this statutory prerequisite. It contends that the person known as Peter Knowland was not a national of the United States at the time of the Schwechat attack, and even if he were, he was not actually injured in the attack. Syria claims that press reports at the time of the incident identified the sole American male wounded during the attack as Dr. Peter Lesley, not Peter Knowland, although it does not submit any evidence to support the contention.

In addition, Syria argues Ms. Van Beneden is not a legitimate representative of the estate of Peter Knowland. Represented by former U.S. Attorney General Ramsey Clark, Syria supports its argument by submitting the FCSC Proposed and Final Decisions that held that Ms. Van Beneden had no standing to pursue a second claim for compensation on behalf of Mr. Knowland's estate.[7] Syria contends that FCSC's Final and Proposed Decisions establish that, at most, Ms. Van Beneden is an "administrator ad hoc," which FCSC determined "is meaningless," and "[n]o one has been able to show that there is now or ever has been an estate of Peter Knowland as a legal entity." Reply at 2.

Ms. Van Beneden advances two arguments to support her standing. First, she submits numerous documents to establish the identity of the deceased Mr. Knowland and her

---

[7] The Court takes judicial notice of the FCSC decisions. *See infra* n.10.

claim to his estate.[8] Second, she contends that Syria's reliance on FCSC's decisions is misplaced. She faults Syria for attaching the decisions "without citing to any specific pages or quoting any relevant passages."[9] Opp'n at 10. She also contends that FCSC's findings "hold[] no bearing . . . [or] weight in this Court." *Id.* at 6. Thus, she contends, "[e]ven if [FCSC] had reached conclusions that were relevant to the issue Syria is arguing in its motion, a decision by [FCSC] is not binding on a U.S. district court." *Id.* at 10.

Ms. Van Beneden, however, misperceives this case and the law. In the context of other state-sponsored terrorism suits, this Court has held that "an estate's standing to maintain a cause of action seeking damages for injuries suffered during the decedent's lifetime is . . . a threshold question concerning the power of the estate to bring and maintain legal claims. Such questions are governed by the law of the state which also governs the creation of the estate." *Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 12 (D.D.C. 2011). Further, the "party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan*, 504 U.S. at 555. Therefore, the question remains whether Ms. Van Beneden has produced sufficient evidence for a reasonable jury to find that Mr. Knowland's estate exists in *some* jurisdiction and that, under the law of that jurisdiction, she has authority to bring and maintain its legal claims. The answers are clearly in the negative.

---

[8] Attached to her Opposition are the items previously mentioned, *supra*: (1) Mr. Knowland's Certificate of Naturalization; (2) Mr. Knowland's U.S. Passport; (3) the Amended Report of Death of an American Citizen Abroad; (4) the Decree Changing Name; (5) the Translated Will; and (6) the Belgian Order. *See* Exs. A-F.

[9] To the extent Ms. Van Beneden may be arguing that Syria has not properly raised collateral estoppel, the argument is unavailing. "Since the doctrine of collateral estoppel, like *res judicata*, 'belongs to courts as well as to litigants,' *sua sponte* consideration is proper." *Burlington Res. Oil & Gas Co. v. U.S. Dep't of the Interior*, 21 F. Supp. 2d 1, 4 n.4 (D.D.C. 1998) (citing *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997)). Likewise, the fact that Syria consented to Ms. Van Beneden's substitution for Mr. Knowland is inconsequential. Standing is a necessary precursor to subject matter jurisdiction. The Court must be sure Ms. Van Beneden can sue without regard to Syria's consent to her substitution.

It is axiomatic that "administrative proceedings may collaterally estop relitigation in courts." *Nasem v. Brown*, 595 F.2d 801, 806 (D.C. Cir. 1979). Where the administrative agency acted in a judicial capacity, affording the parties before it "an adequate opportunity to litigate," *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966), *superseded on other grounds by* Contract Disputes Act of 1978, 41 U.S.C. §§ 601-13 (current version at 41 U.S.C. §§ 7101-09), and the "traditional elements of the doctrine" are met, *Nasem*, 595 F.2d at 806, the factual findings of the agency are given preclusive effect, *id.*

Here, the proceedings before FCSC warrant the application of collateral estoppel to its factual findings. Before issuing its Final Decision on the second claim submitted in Mr. Knowland's name, FCSC received documentary evidence, considered expert reports, and held oral argument. Moreover, the issues litigated before, and decided by, FCSC are identical to those which are at stake here: namely, the existence of Mr. Knowland's estate and Ms. Van Beneden's role as putative representative of that estate. As previously discussed, Ms. Van Beneden and her counsel had a full and fair opportunity to litigate these issues before FCSC. The issues in fact were litigated and FCSC necessarily and expressly decided that Ms. Van Beneden lacked standing for several reasons, the most basic of which is that there was (and is) no evidence that Mr. Knowland's estate in fact exists as a legal entity.[10]

---

[10] Evidence of an estate is similarly lacking here, leading this Court to reach the same conclusion. In the context of a motion for summary judgment, "it is settled law that [a] court may take judicial notice of other cases including the same subject matter or questions of a related nature between the same parties." *Fletcher v. Evening Star Newspaper Co.*, 133 F.2d 395, 395 (D.C. Cir. 1942). This is also true of administrative determinations, especially where they are a matter of public record. *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C. Cir. 1979). FCSC's decisions make clear that Ms. Van Beneden's counsel conceded before FCSC that "the estate was in disarray" and "shambles," *Knowland II*, Claim No. LIB-II-166 at 7, and that the lawyers had not been retained *by the estate*, *id.* at 5. As the Court warned on April 21, 2011, the continuation of this litigation after Mr. Knowland's death was premised on the Court's satisfaction that the "[e]state of Peter Knowland exists as *some* legal entity, though an heir is not named." Apr. 21, 2011 Order. Between counsel's concessions before FCSC and the dearth of

15

Collateral estoppel "conserve[s] judicial resources, avoid[s] inconsistent results, engender[s] respect for judgments of predictable and certain effect, and . . . prevent[s] serial forum-shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981).[11] Ms. Van Beneden is collaterally estopped from contesting the fact that she has not been appointed to represent Mr. Knowland's estate and she provides no evidence that such an estate exists as a legal entity in any country, with or without her appointment as administrator. She therefore does not have standing to pursue the instant litigation.

### IV.  CONCLUSION

Ms. Van Beneden has no standing to sue Syria. Accordingly, the Court will grant Syria's Motion for Summary Judgment. A memorializing Order accompanies this Memorandum Opinion.[12]

/s/
ROSEMARY M. COLLYER
Date: January 22, 2014                                                                  United States District Judge

---

contrary evidence provided in these pleadings, the Court is not satisfied that his estate exists as a legal entity. Even if collateral estoppel did not apply, the Court, taking judicial notice of the record before FCSC, would find that it is without jurisdiction to hear the matter. *See Haase*, 835 F.2d at 906 ("[a] defect of standing is a defect in subject matter jurisdiction").

[11] Syria raises several additional arguments in its Reply, including sovereign immunity. Because the Court finds that Ms. Van Beneden is collaterally estopped from relitigating FCSC's factual determinations, the Court need not address these arguments.

[12] The Court notes that after today, the only remaining parties are Syrian Air Force Intelligence, General Muhammed Al Khuli, chief of Syrian Air Force Intelligence, and Major Al-Sanusi, chief of Libyan Internal Security. Ms. Van Beneden has not effected service of process on Syrian Air Force Intelligence or General Al Khuli, and the record is unclear as to whether Mr. Knowland's initial award of three million dollars was premised on him dismissing all Libyan parties from this litigation, including Major Al-Sanusi. *See Knowland I*, Claim No. LIB-II-166 at 2. In any event, if Ms. Van Beneden lacks standing to sue Syria, then she lacks standing to sue the remaining defendants as well. Accordingly, the Court will dismiss this litigation in its entirety.